BENEDICTO, Treasurer of Porto Rico, v. COMPANIA DE LOS FERROCARRILES DE PUERTO RICO.

(Circuit Court of Appeals, First Circuit. February 4, 1920.)

No. 1420.

TAXATION ☞611(4)—SUIT TO ENJOIN COLLECTION OF TAXES NOT MAINTAINABLE FOR WANT OF PROPER PARTIES.

A railroad company, whose franchise and property were exempted from taxation, which contracted with another company to operate its road and pay for new extensions and equipment, *held* not entitled to maintain a suit to enjoin collection of taxes levied against property so acquired, on the ground that it is the owner and the property within its tax exemption, to which suit the operating company is not a party.

Appeal from the District Court of the United States for the District of Porto Rico; Peter J. Hamilton, Judge.

Suit by the Compania de los Ferrocarriles de Puerto Rico against Jose E. Benedicto, Treasurer of Porto Rico. Decree for complainant, and defendant appeals. Reversed and remanded, with directions to dismiss bill.

Charles Marvin, of Washington, D. C. (Dana T. Gallup, of Washington, D. C., on the brief), for appellant.

Francis H. Dexter, of San Juan, P. R., for appellee.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge. The plaintiff (appellee) is the owner of a franchise for the construction and operation of a railroad system in Porto Rico, one of the provisions of which is an exemption from taxation on its railroad property for 25 years, ending in 1927. When, in 1902, this exemption was granted, the railroad system was but partially built and equipped. Under a contract in 1902 the operation of the system was turned over to the American Railroad Company of Porto Rico—the plaintiff, however, to furnish the capital requisite for completing, equipping, and extending the system. This operating contract was so modified in 1906 as thereafter to place the burden of furnishing new capital upon the American Company; it being secured therefor upon the equipment and rolling stock purchased and other facilities created out of the funds so advanced, in some fashion not very clearly defined, either in the contracts or in the evidence. The American Company is not entitled to exemption from taxation on any railroad property owned by it. The exemption right has not been assigned, and it is not now claimed to be assignable. Nor is it claimed that the operating contracts amount to a lease. See opinion of Attorney General Wickersham dated December 1, 1910, 28 Op. Attys. Gen., 491, where the relations of the two companies and the exemption from taxation are discussed in detail. So far as applicable to this case, we accord with the conclusions there reached by the learned Attorney General. Morgan v. Louisiana, 93 U. S. 217, 23 L. Ed. 860; Railroad Co. v. Commissioner, 103 U. S. 1, 26 L. Ed. 359; Chesapeake & Ohio Railway Co. v. Miller, 114 U. S. 176, 5 Sup. Ct. 813, 29 L. Ed. 121; Pickard v. Railroad Co., 130 U. S. 637, 9 Sup. Ct. 640, 32 L. Ed. 1051.

Since 1906 the American Company has actually furnished and used for equipment and new construction much more than $1,000,000 of new capital. Cars used upon the system bear the name of the American Company. Part of the rolling stock is testified to be "security," in exactly what legal form does not appear. Part of its advances seem to be secured by mortgage upon certain property.

For the tax year 1917–18 the defendant, as treasurer of Porto Rico, assessed the American Company (not the plaintiff) for taxes on the basis of $1,000,000 property owned by it and used in this railroad system. On this basis of $1,000,000 there was levied for the first half of the fiscal year a tax amounting to $6,636.50. This was paid by the American Company under protest. Suit to recover said amount was then brought by the American Company in the insular court, dismissed on demurrer, and the American Company failed to perfect and prosecute its right of appeal. There is nothing to indicate that the American Company has not a plain, adequate, and complete remedy at law for any illegal taxes assessed upon it; but its rights and duties as a taxpayer are not now before the court. For the second half of the same tax year a tax of $7,019.12 was levied by the defendant on the

same basis of $1,000,000 taxable property. Then this suit was brought by the plaintiff, the owner of the franchise, seeking an injunction against the collection of this tax. The gist of the plaintiff's claim is that the defendant has assessed the plaintiff's property as being the property of the American Company, thus clouding its title to certain realty (a pier assessed for $40,000), and subjecting it, as alleged to a multiplicity of suits to. defend its personalty, besides impairing the obligation of the exemption contract.

The contentions of the plaintiff were in part sustained by the court below, which found that the pier, assessed at $40,000, and the rolling stock, assessed at $500,000, belong to the plaintiff, and as such were entitled to exemption from taxation. Thereupon a final decree was entered, enjoining the defendant, as treasurer of Porto Rico, his successors in office, and all employés and agents of the Treasury Department—

"from levying and collecting taxes of any kind or character for insular or municipal purposes under the authority of the Legislature of Porto Rico upon any or all real property, rolling stock, and all other property used by the American Railroad Company of Porto Rico and necessary for the operation of the railroad lines of the Compania de los Ferrocarriles de Puerto Rico under a certain operating agreement made and entered between the said companies on the 22d day of March, 1902, as modified by the agreement of November 15, 1906.

· "This injunction shall be in force until the 24th day of January, 1927, when the exemption to plaintiff company hereinbefore referred to expires by operation of law."

From this decree an appeal was taken to this court. There are 38 assignments of error, with which we are not called upon to deal in detail. It is enough now to say that they raise, broadly, objections fatal, in our view, to the maintenance of the action.

In effect, the plaintiff, by this suit, seeks to induce the court to determine important and difficult questions of title and property rights as between it and the American Company, and also as to the rights and duties of the American Company as a taxpayer on its investment of more than $1,000,000 in the railroad system of Porto Rico. It is too plain for argument that the court has no jurisdiction to deal with either class of questions, unless and until the American Company is before the court. Property derived from the capital furnished by the American Company for this railroad enterprise cannot be adjudicated to be the plaintiff's property, and thus covered by its tax exemption, without at the same time determining it to be the plaintiff's as against rights which may be asserted by the American Company. On this record we cannot legally determine the facts upon which the plaintiff grounds its claim for relief in equity.

It may be well to add that this opinion is not to be taken as an intimation that, apart from the fatal defect as to proper parties, we accord with the court below in its deductions from the evidence or in its rulings of law. But on this record we should be dealing with purely moot questions if we discussed and determined the questions of fact and law with which the court below undertook to deal. It is enough now to hold that the plaintiff has not made out a case within the doctrine of Greene v. Louis & Interurban Co., 244 U. S. 499, 507,

37 Sup. Ct. 673, 61 L. Ed. 1280, Ann. Cas. 1917E, 88; Truax v. Raich, 239 U. S. 33, 37, 36 Sup. Ct. 7, 60 L. Ed. 131, L. R. A. 1916D, 545, Ann. Cas. 1917B, 283; Phila. Co. v. Stimson, 223 U. S. 605, 621, 32 Sup. Ct. 340, 56 L. Ed. 570; Ex parte Young, 209 U. S. 123, 150, 155, 28 Sup. Ct. 441, 52 L. Ed. 714, 13 L. R. A. (N. S.) 932, 14 Ann. Cas. 764; Benedicto v. Porto Rican Tobacco Co., 256 Fed. 422, 167 C. C. A. 550; Looney v. Crane Co., 245 U. S. 178, 38 Sup. Ct. 85, 62 L. Ed. 230. Nor does the case fall within the principal approved by the Supreme Court in Pollock v. Farmers' Trust Co., 157 U. S. 429, 553, 15 Sup. Ct. 673, 39 L. Ed. 759.

The decree of the District Court is reversed, and the case is remanded to that court, with directions to dismiss the bill, and the appellant recovers his costs of appeal.